_____
)
**SLADE GORTON & CO.,**                )
)
**Plaintiff**                          )
)
v.                                     )        **Civil Action No. 13-cv-12290-DJC**
)
**HSBC BANK CANADA,**                  )
)
)
**Defendant.**                         )
_____ )

## MEMORANDUM AND ORDER

**CASPER, J.**                                          **September 23, 2014**

## I.      Introduction

Plaintiff Slade Gorton & Co., Inc. ("Slade Gorton") brings this action against Defendant HSBC Bank Canada ("HSBC") arising out of a letter of credit issued by HSBC to Gray Aqua Group Ltd. ("Gray Aqua"), for the benefit of Slade Gorton. Slade Gorton seeks to recover damages sustained as a result of HSBC's alleged breach of the letter of credit, fraudulent inducement, fraud, and violation of Mass. Gen. L. c. 93A ("Chapter 93A"). Pursuant to Fed. R. Civ. P. 12(b)(2) and (6), HSBC now moves to dismiss for lack of personal jurisdiction and for failure to state a claim upon which relief may be granted. For the reasons set forth below, the motion to dismiss for lack of personal jurisdiction is ALLOWED as it pertains to the claim for breach of the letter of credit and to one of the bases for the Chapter 93A claim. The motion to dismiss for lack of personal jurisdiction is DENIED as to the remaining claims. The motion to dismiss for failure to state a claim is also DENIED.

## II.    Factual Allegations

Upon a motion to dismiss for want of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction exists.   Mass. School of Law at Andover, Inc. v. Am. Bar Ass'n., 142 F.3d 26, 34 (1st Cir. 1998).   Here, the *prima facie* standard governs the jurisdictional determination.   U.S. v. Swiss Am. Bank, Ltd., 274 F.3d 610, 619 (1st Cir. 2001). The *prima facie* standard requires that the facts alleged by Slade Gorton be taken as true and construed in the light most favorable to its jurisdictional claim.   Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994).   This Court also considers uncontradicted facts set forth by HSBC.   Andover, 142 F.3d at 34.   The analysis draws on both the pleadings and the parties' supplementary filings, but does not "credit conclusory allegations or draw farfetched inferences." Ticketmaster, 26 F.3d at 203.

Unless otherwise noted, the following facts are as alleged in the complaint.   Slade Gorton, a Massachusetts corporation with a principal place of business in Massachusetts, is a distributor of seafood products.   Compl., D. 1 ¶ 1.   In June 2011, Slade Gorton entered into a contract with Gray Aqua, a Canadian corporation, by which Gray Aqua agreed to supply fresh salmon to Slade Gorton.   Id. ¶ 6.   Gray Aqua was subsequently beset with financial difficulties that threatened its salmon farming operations and Slade Gorton's salmon supply.   Id. ¶ 7.   In March 2013, Slade Gorton agreed to advance up to $2,500,000 to Gray Aqua to fund its operations.   Id. ¶ 9.   To secure repayment of those advances, on April 4, 2013, HSBC issued a letter of credit to Gray Aqua for the benefit of Slade Gorton.   Id. ¶ 10.   Slade Gorton's first advance to Gray Aqua occurred on March 11, 2013 and its second on March 21, 2013, both before the issuance of the letter of credit.   Id. ¶¶ 12, 19-20.   The third advance to Gray Aqua occurred on April 4, 2013, the same day the letter of credit issued.   Id. ¶ 21.   Slade Gorton and

Gray Aqua did not amend their supply agreement to reflect the financing arrangement until April 12, 2013, after HSBC issued the letter of credit, making the amendment effective as of March 11, 2013, the date of the first advance. Id. ¶ 12.

The amendment included a repayment schedule and further provided that Slade Gorton could offset the price of purchased fish against Gray Aqua's outstanding debt. Id. ¶¶ 14, 16. Gray Aqua's repayment obligations were secured by the letter of credit. Id. ¶ 17. The letter of credit provided that HSBC would pay Slade Gorton in the event that Gray Aqua failed to repay the advances, provided that Slade Gorton met certain conditions. Id. ¶ 30. Specifically, Slade Gorton's written demand for payment was required to be accompanied by: (1) a signed statement stating the amount requested; (2) certified copies of the remittance confirmations of the advances made by Slade Gorton, each confirmation to include both the letter of credit number and the installment number of the advance; and (3) the original letter of credit. Id. at ¶30. The amount available for draw under the letter of credit automatically decreased weekly in the amount that Gray Aqua was required to repay to Slade Gorton. Id. ¶ 31.

The letter of credit outlined the dates on or before which Slade Gorton was to make each of a total of six advances to Gray Aqua. D. 1-2 at 2. The first, fourth and sixth advances occurred on the dates specified by the letter of credit. D. 1 ¶¶ 20-24; D. 1-2 at 2. However, the second and third advances, both of which occurred on or before the date on which the letter of credit was issued by HSBC, were late. The fifth advance was also late. Id.

Gray Aqua defaulted on its repayment obligations after three payments. Id. ¶¶ 47-51. On July 5, 2013, Slade Gorton demanded that HSBC pay $1,500,000 under the letter of credit, the full amount then available for draw. Id. ¶ 52. Slade Gorton included copies of the six remittance confirmations, corresponding to the advances made to Gray Aqua, and a copy of the Letter of

Credit.  Id.  HSBC refused Slade Gorton's demand on July 10, 2013, because some of the remittance confirmations did not reference the installment number of the corresponding advance or the letter of credit number.  Id. ¶ 53.  In addition, three of the advances were made late, and Slade Gorton submitted a duplicate letter of credit instead of the original.  Id.

The crux of Slade Gorton's position is that any discrepancies in its demand were immaterial.  The advances made on or before the date of the letter of credit's issuance could not have complied with its requirements because Slade Gorton could not have known what those requirements were.  Id. ¶¶ 39-40.  Moreover, Slade Gorton avers that an original letter of credit never existed because HSBC issued it only in electronic form.  Id. ¶¶ 27-28.  Slade Gorton received a printout of the letter of credit only because its bank sent a letter advising that HSBC had issued the letter of credit.  Id. ¶ 29.

Two days after rejecting Slade Gorton's demand, HSBC made assurances that it would remit the $1,500,000 once Gray Aqua waived the discrepancies in the demand.  Id. ¶ 55.  Gray Aqua also assured Slade Gorton that it would sign a waiver.  Id. ¶¶ 56, 61-63.  Relying on these representations, Slade Gorton did not seek to rectify the discrepancies in its demand or to make a further demand against the letter of credit.  Id. ¶ 66.  Slade Gorton alleges that, despite HSBC's pledge that it would pay, it instead instructed Gray Aqua to refuse to waive the letter of credit's requirements.  Id. ¶ 64.  On August 20, 2013, Slade Gorton received HSBC's official rejection of its demand, the first rejection of July 10 having been transmitted by email.  Id. ¶ 65.  Slade Gorton subsequently repeated its demand that HSBC pay $1,500,000, but by that time the available draw amount had dwindled to just $150,000.  Id. ¶¶ 69-71.  HSBC rejected that demand on September 4, 2013.  Id. ¶ 74-75.

The first count of Slade Gorton's complaint is for breach of the letter of credit. According to Slade Gorton, the discrepancies in its draw demands were immaterial and thus an impermissible basis for refusal.  Id. ¶ 80.  The second count alleges fraud in the inducement because "HSBC fraudulently represented that it would provide guarantees or assurances of payment to Slade Gorton in connection with Slade Gorton's contemplated agreement to make [a]dvances to Gray Aqua."  Id. ¶ 84.  HSBC also represented that "it would remit payment to Slade Gorton under the [l]etter of [c]redit upon Slade Gorton's written demand."  Id. ¶ 85.  These representations induced Slade Gorton to enter into the amendment with and make advances to Gray Aqua.  Id. ¶ 87.  Slade Gorton's third claim, for fraud, cites these same two representations along with HSBC's assurances, following its rejection of Slade Gorton's July 2013 demand, that Gray Aqua would waive the demand's discrepancies and that HSBC would honor the letter of credit.  Id. ¶¶ 90-95.  This conduct allegedly caused Slade Gorton to delay enforcing its rights while the amount available for draw under the letter of credit decreased.  Id. ¶¶ 97-99.  Slade Gorton's final claim is for violation of Mass. Gen. L. c. 93A.  HSBC's alleged unfair and deceptive practices include:  (1) making material misrepresentations to induce Slade Gorton to make the advances to Gray Aqua; (2) issuing a letter of credit with which it was impossible to comply; (3) making material misrepresentations that delayed Slade Gorton's response to HSBC's rejection of its first demand; (4) instructing Gray Aqua not to sign the waiver; and (5) rejecting Slade Gorton's demands under the letter of credit due to immaterial discrepancies.  Id. ¶ 106.

Pursuant to Fed. R. Civ. P. 12(b)(2), HSBC moves to dismiss because this Court lacks personal jurisdiction.  D. 25 at 2.  Invoking Fed. R. Civ. P. 12(b)(6), HSBC further argues that Slade Gorton fails to state a cause of action.  Id. at 6.  This Court held a hearing on this motion and took the matter under advisement.  D. 38.

## III.  Discussion

### A.  HSBC's Motion to Dismiss Based on Lack of Personal Jurisdiction

#### 1.  Governing Legal Standard

There are two types of personal jurisdiction:  general and specific jurisdiction.  Slade Gorton does not appear to assert general jurisdiction and this Court sees no basis for doing so. The Court therefore confines its analysis to whether Slade Gorton has met its burden of establishing specific jurisdiction over HSBC.

"In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state." Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002) (internal quotation marks omitted).  Massachusetts courts construe the long-arm statute as extending specific jurisdiction to the limits permitted by the due process clause. Adelson v. Hananel, 652 F.3d 75, 80 (1st Cir. 2011).  "The inquiry into specific jurisdiction lends itself to a tripartite analysis." Philips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999).  First, the Court must ask whether the plaintiff's claim relates to or arises out of the defendant's contacts with the forum.  Id.  Second, the Court must determine whether those contacts constitute purposeful availment of the benefits and protections afforded by the forum's laws.  Id.  Finally, if the Court answers the first two inquiries in the affirmative, then the Court must analyze whether it is reasonable to exercise jurisdiction using five "Gestalt" factors that assess the fundamental fairness of the exercise of jurisdiction.  Id.; see Swiss Am. Bank, 274 F.3d at 621.

### 2.     Breach of the Letter of Credit

The claim for breach of the letter of credit must be analyzed distinctly from the fraud-based claims since "[q]uestions of specific jurisdiction are always tied to the particular claims asserted." Exeter, 196 F.3d at 289 ("commend[ing] the lower court's decision to analyze the contract and tort claims discretely"). As to the contract claim here, Slade Gorton asserts personal jurisdiction on the basis of its position as beneficiary of the letter of credit issued by HSBC to Gray Aqua. D. 30 at 5.

The letter of credit at issue in this case involved Gray Aqua, the seller, obtaining the letter of credit naming Slade Gorton, the buyer, as beneficiary. This structure reflects the underlying transaction in which Slade Gorton advanced funds to Gray Aqua to finance Gray Aqua's operations. Gray Aqua was required to repay those funds, either by remitting cash or by crediting the amounts advanced against the purchases made by Slade Gorton.

The question of whether the issuer of a letter of credit is subject to personal jurisdiction in the beneficiary's home forum appears not to have yet been squarely addressed by the First Circuit. Other Circuits that have addressed the issue have held that a bank that merely issues a letter of credit to its customer does not subject itself to personal jurisdiction in the forum where the beneficiary of the letter of credit resides. Moog World Trade Corp. v. Bancomer, S.A., 90 F.3d 1382,1386 (8th Cir. 1996); Jet Charter Serv., Inc. v. Koeck, 907 F.2d 1110, 1114 (11th Cir. 1990); Chandler v. Barclays Bank PLC, 898 F.2d 1148, 1153 (6th Cir. 1990); Pac. Reliant Indus., Inc. v. Amerika Samoa Bank, 901 F.2d 735, 737 (9th Cir. 1990); Leney v. Plum Grove Bank, 670 F.2d 878, 880 (10th Cir. 1982); Empire Abrasive Equip. Corp. v. H.H. Watson, Inc., 567 F.2d 554, 558 (3rd Cir. 1977); see RZS Holdings, AVV v. Commerzbank, Ag, 279 F. Supp. 2d 716, 720 (E.D. Va. 2003) (collecting cases and stating "the consensus appears to be that the

beneficiary's status as a resident of the forum state is not sufficient to establish personal jurisdiction over the banks involved in issuing or confirming the letter of credit for the benefit of the beneficiary").

Due process requires that the defendant, by virtue of his contacts with the forum state, should reasonably anticipate being haled into court there. "Random, fortuitous or attenuated contacts, or contacts produced through the unilateral activity of a third person are insufficient to reasonably indicate to the defendant that he should anticipate being subject to personal jurisdiction of the forum state's courts." Jet Charter, 907 F.2d at 1113, citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). The cases cited above reason that the issuing bank in a letter of credit transaction does not purposely avail itself of the benefits and protections of the beneficiary's forum state. See, e.g., Chandler, 898 F.2d at 1151 (concluding that defendant bank did not purposely avail itself of the "privilege of acting or causing a consequence to occur" in forum state); Amerika Somoa, 901 F.2d at 738 (stating that defendant did not invoke the benefits and protections of law of forum state and could not reasonably have expected to be haled into court there); Leney, 670 F.2d at 880 (holding bank's slight connections to forum state indicated that bank could not have reasonably anticipated being haled into court in forum state); H. Ray Baker, Inc. v. Associated Banking Corp., 592 F.2d 550, 553 (9th Cir. 1979) (holding that plaintiffs failed to show that defendant "could reasonably have expected the issuance or negotiation of this letter to have effects in [the forum state] that would make it fair to require it to defend this suit [in the forum state]"); Empire, 567 F.2d at 558 (holding that bank did not subject itself to adjudicatory authority of forum state with respect to obligations under letter of credit solely because beneficiary was corporate resident of forum state).

Slade Gorton argues, however, that HSBC here did more than merely issue a letter of credit with Slade Gorton as its beneficiary. Slade Gorton contends that HSBC was an integral part of the negotiations between Slade Gorton, Gray Aqua and RBS Citizens, N.A. ("Citizens") (Slade Gorton's bank) during which the parties discussed a number of options to assist Gray Aqua. D. 30 at 3; Gorton Aff., D. 31 ¶ 6. Over the course of eight months, HSBC allegedly corresponded "dozens of times with both Slade Gorton and Citizens in Massachusetts, by email, letter and telephone . . . ." D. 30 at 3; D. 31 ¶¶ 7-8. Those contacts began in September, 2012 when HSBC and Slade Gorton discussed a transaction in which Slade Gorton would issue a letter of credit for the benefit of Gray Aqua. D. 30 at 3; D. 31 ¶¶ 7-9. The contemplated transaction was never consummated, an issue to which the Court will return below.

Correspondence continued through the early months of 2013. D. 30 at 4; D. 31 ¶¶ 10-18, 22-23. During those months, a number of telephone calls regarding the letter of credit ultimately issued occurred between Slade Gorton and HSBC, and HSBC sent a letter to Slade Gorton confirming HSBC's approval of a "Guarantee Line" to assist with the financing offered by Slade Gorton to Gray Aqua. D. 31-3; D. 31-4; D. 31-5; D. 31-7. HSBC also communicated with Citizens at its Massachusetts offices regarding the amendment to the supply agreement and HSBC's guarantee of Gray Aqua's repayment of the advances made by Slade Gorton. D. 30 at 4; Taylor Aff., D. 33 at ¶¶ 4-5; D. 31-8; D 31-9.

Slade Gorton further alleges that, after the issuance of the letter of credit, HSBC continued to communicate with Slade Gorton. Slade Gorton requested an amendment to the letter of credit to reflect the dates the advances were actually made. D. 30 at 5-6; D. 31 ¶¶ 24-25. HSBC refused. Id. After Gray Aqua defaulted, Slade Gorton spoke and emailed with HSBC regarding HSBC's rejection of Slade Gorton's demand under the letter of credit. Bernstein Aff.,

D. 32 ¶¶ 6, 8.  In those communications, HSBC allegedly made the fraudulent assurances that Gray Aqua would waive the discrepancies in Slade Gorton's demand and HSBC would pay the amount requested by Slade Gorton.  D. 32-2.  Slade Gorton also received several written rejections from HSBC of its first and second demands for payment under the letter of credit.  D. 1-6; D. 1-9; D. 1-11; D. 32-1.

There is some legal support to bolster Slade Gorton's position that personal jurisdiction is warranted by the nature and extent of an issuing bank's involvement in negotiations surrounding a letter of credit and its underlying transaction.  For example, the Eighth Circuit in Moog summarized the case law emanating from other circuits stating that "a bank issuing a commercial letter of credit at the request of its customer, payable at the bank's offices, does not *without more* subject itself to personal jurisdiction in a distant forum, such as a court where the letter of credit beneficiary resides."  Moog, 90 F.3d at 1386 (emphasis added); see Empire, 567 F.2d at 558 (holding no personal jurisdiction where plaintiff-beneficiary had no dealings with the defendant-bank with respect to the issuance of the letter of credit and the bank did nothing in the forum state); Chandler 898 F.2d at 1153 (same); Leney, 670 F.2d at 880 (same).

Slade Gorton argues that HSBC's involvement in the negotiation of the letter of credit and the related supply agreement amendment is just the "more" contemplated by the court in Moog.  See D. 30 at 8.  HSBC took action in Massachusetts, as alleged by Slade Gorton, by making phone calls and sending email, mail and faxes to Slade Gorton.  But HSBC's contacts, even as alleged, with Massachusetts arose out of Gray Aqua's request for the letter of credit to facilitate Gray Aqua's supply contract with Slade Gorton.  HSBC's contacts with Massachusetts were at the request of its customer, Gray Aqua.  Many of the contacts alleged by Slade Gorton are merely those that would occur between any beneficiary and issuing bank.  For example,

Slade Gorton cites a call and voicemail relating to the finalization of the letter of credit. D. 31-9, 31-10. Calls regarding an amendment to the letter of credit similarly would occur in any letter of credit transaction, and, importantly, were likely initiated by Slade Gorton, the party seeking the amendment, and not by HSBC. D. 31 ¶ 25. Further calls occurred regarding Gray Aqua's default, also to be expected when a letter of credit is invoked and also likely to be initiated by the beneficiary. D. 32 ¶ 6. Four contacts (two letters, an email and a fax) all consist of HSBC's refusal of Slade Gorton's two demands on the letter of credit. D. 1-6, 1-9, 1-11, 32-1. These contacts are in the normal course in letter of credit transactions. In none of these contacts does the Court find the "more" contemplated by Moog. The contacts here do not rise to the level of HSBC purposefully availing itself of the privilege of conducting business in Massachusetts. See Jet Charter, 907 F.2d at 1113 (holding no personal jurisdiction because contacts were brief and non-essential where officer of issuing bank visited beneficiary in forum state twice, provided a letter to beneficiary confirming loan to buyer, and gave assurances that letter of credit would be delivered to forum state); First Metro Bank v. Central Bank, 904 F. Supp. 2d 1215, 1227-29 (N.D. Ala. 2012) (holding no personal jurisdiction where issuing bank initiated contact with beneficiary and communicated with beneficiary by phone, email and letter many times over three years because contacts were not sufficiently significant and there was no lending relationship between issuing bank and beneficiary).

HSBC's contacts were in connection with its efforts to serve its client, Gray Aqua, and not an effort to avail itself of the privilege of conducting business in Massachusetts. When HSBC issued the letter of credit, it performed a contract with its customer, Gray Aqua. Moog, 90 F.3d at 1386. Gray Aqua was the party responsible for any fee associated with the issuance of the letter of credit along with the repayment to HSBC of any funds HSBC paid to Slade Gorton

pursuant to the letter. The amendment to Gray Aqua's supply agreement with Slade Gorton was a distinct contractual relationship. See Moog, 90 F.3d at 1385; RZC Holdings, 279 F. Supp. 2d at 722 (holding no personal jurisdiction over defendant confirming bank because phone calls and fax transmissions did not "comprise[] an effort by Defendant to avail itself of the privilege of conducting business" in forum state and because contact was "not of a solicitous nature" but was in connection with its performance of contract with the issuing bank).

Moreover, at least some of the contacts asserted as jurisdictionally significant by Slade Gorton are not relevant to the Court's analysis. In alleging "dozens" contacts between itself and HSBC over the course of eight months, Slade Gorton relies in part on contacts relating to a letter of credit arrangement that was never transacted and is not the subject of this lawsuit. Slade Gorton references at least two calls and two emails between Slade Gorton and HSBC regarding a contemplated letter of credit that would have issued to Slade Gorton by Slade Gorton's own bank for the benefit of Gray Aqua. D. 31-1, 31-6. Slade Gorton's claims do not arise out of the contacts regarding this unrealized transaction, and thus those contacts are of no import in the Court's jurisdictional assessment. "The relatedness requirement is not met merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather the action must directly arise out of the specific contacts between the defendant and the forum state." Exeter, 196 F.3d at 290 (quoting Sawtelle v. Farrell, 70 F.3d 1381, 1389 (1st Cir. 1995)).

Accordingly, the Court does not have personal jurisdiction over HSBC with respect to the breach of the letter of credit claim.

### 3. Fraudulent Inducement and Fraud Claims

#### a. Relatedness

The relatedness analysis for a tort claim differs from that for a contract claim. In a contract claim, the Court must look at the elements of the cause of action and ask whether the defendant's forum-based activities were "instrumental in the formation of the contract," Andover, 142 F.3d at 35 (quoting Hahn v. Vermont Law Sch., 698 F.2d 48, 51 (1st Cir. 1983)), or in its breach. Exeter, 196 F.3d at 289. Here, Slade Gorton has not alleged sufficient contacts specific to the issuance and performance of the letter of credit to show that HSBC was instrumental to Slade Gorton's participation in the financing arrangement, and thus this Court lacks personal jurisdiction with respect to Slade Gorton's claim for breach. However, the jurisdictional analysis of a tort-based cause of action differs. For a fraud claim, the Court "must probe the causal nexus between the defendant's contacts and the plaintiff's cause of action." Id. Because the inquiry requires a different focus, personal jurisdiction may lie with respect to a tort claim when it does not with respect to a contract claim. See id.; see also First Metro, 904 F. Supp. 2d at 1228 (acknowledging that an intentional tort may be sufficient to warrant exercise of jurisdiction where there was no personal jurisdiction with respect to claim for breach of letter of credit, but not reaching the issue since the "complaint cannot fairly be construed as asserting a claim for fraud or any other intentional tort").

Whether Slade Gorton's fraud and fraudulent inducement claims are related to HSBC's in-state activities depends on whether Slade Gorton has established both cause in fact and legal cause. Andover, 142 F.3d at 35. In other words, the injury would not have occurred "but for" HSBC's in-forum activity and that activity also gave rise to the cause of action. Id.; Lawson v. Affirmative Equities Co., 341 F. Supp. 2d 51, 59, 61 (D. Mass. 2004) (noting the expansiveness

of "'but-for' train of events test'").  Here, accepting the allegations in the complaint as true, Slade Gorton's alleged injuries would not have occurred but for HSBC's in-forum representations, and those representations give rise to Slade Gorton's fraud-based claims.

The alleged representations forming the basis of Slade Gorton's fraud in the inducement claim are:  (1) "HSBC fraudulently represented that it would provide guarantees or assurances of payment to Slade Gorton in connection with Slade Gorton's contemplated agreement to make [a]dvances to Gray Aqua."  D. 1 ¶ 84; and (2) HSBC represented that "it would remit payment to Slade Gorton under the [l]etter of [c]redit upon Slade Gorton's written demand."  Id. ¶ 85.  Slade Gorton's fraud claim is also based on those two alleged misrepresentations along with a third alleged misrepresentation by HSBC.  HSBC allegedly made assurances, following its rejection of Slade Gorton's July 2013 demand, that Gray Aqua would waive the demand's discrepancies and that HSBC would honor the letter of credit.[1]  Id. ¶¶ 90-95.

Slade Gorton alleges that it would not have agreed to finance Gray Aqua's operations had HSBC not made the alleged misrepresentations.  D. 1 ¶ 87.  Slade Gorton further alleges that HSBC's assurances that the discrepancies in Slade Gorton's demand would be waived and the letter of credit honored resulted in inaction on the part of Slade Gorton in its attempts to enforce its rights and cure the deficiencies.  Id. ¶¶ 97-98.  HSBC's allegedly fraudulent communications

---

[1]The affidavits submitted by Slade Gorton do not make clear exactly when the first two representations occurred, but it may be inferred that they occurred in telephone calls between Slade Gorton and HSBC in March of 2013 when the parties solidified their plan for HSBC to issue a letter of credit to Gray Aqua for the benefit of Slade Gorton.  D. 31 ¶ 13; D. 31-7.  Prior to that time, the contacts cited by Slade Gorton did not specifically pertain to the letter of credit ultimately issued in this case but to the one never issued to Slade Gorton.  The affidavits submitted by Slade Gorton show that the third representation allegedly occurred in a call between Slade Gorton and HSBC on July 12, 2013.  D. 32 ¶ 8; D. 32-2.

form the basis of Slade Gorton's intentional tort claims and thus the relatedness prong of the jurisdictional inquiry is satisfied.  See Neal v. Janssen, 270 F.3d 328, 333 (6th Cir. 2001).

### b.  Purposeful Availment

The Court next must consider whether HSBC's contacts with Massachusetts represented a purposeful availment by HSBC of the privilege of conducting business in Massachusetts. Workgroup Tech. Corp. v. MGM Grand Hotel, LLC, 246 F. Supp. 2d 102, 113 (D. Mass. 2003). "The function of the purposeful availment requirement is to assure that personal jurisdiction is not premised solely upon a defendant's random, isolated, or fortuitous contacts with the forum state."  Id. at 113-14 (internal quotation marks omitted).  The two cornerstones of this inquiry are forseeability and voluntariness.  Ticketmaster, 26 F.3d at 207-208.  A defendant's conduct in the forum state must be such that he should reasonably anticipate being haled into court there.  Id. Jurisdiction cannot rest on the unilateral actions of another party or a third person.  Burger King, 471 U.S. at 475.

Although the alleged contacts giving rise to Slade Gorton's fraud-based claims are few, the Court concludes that they form a sufficient basis for specific jurisdiction.  It is the quality of the contacts, not their quantity, that determines whether they demonstrate purposeful availment. Neal, 270 F.3d at 332.  "When the actual content of the communications into the forum gives rise to an intentional tort action, that alone may constitute purposeful availment."  Id.  HSBC's alleged representations were initiated by HSBC and directed to Slade Gorton in Massachusetts. HSBC voluntarily participated in phone calls with Slade Gorton in Massachusetts in which it made the alleged representations, knowing that the brunt of the injury would be felt in Massachusetts.  Because HSBC is alleged to have made material misrepresentations to Slade Gorton in Massachusetts, HSBC purposely availed itself of the privilege of conducting activities

in Massachusetts, making it foreseeable that it could be haled into court here.  Id. at 332 (holding personal jurisdiction could be exercised over foreign sales agent in Tennessee where defendant defrauded plaintiffs in phone calls and faxes as to the price offered for horse being sold by plaintiffs); FMC Corp. v. Varonos, 892 F.2d 1308, 1314 (7th Cir. 1990) (holding foreign employee of plaintiff purposely availed herself of conducting activities in Illinois when she sent fraudulent telexes and telecopied reports to plaintiff in Illinois); cf. Walden v. Fiore, 134 S. Ct. 1115, 1122 (2014).

### c.  Reasonableness

Next, the Court must analyze the "Gestalt" factors to determine whether the exercise of personal jurisdiction offends traditional notions of fair play and substantial justice.  Those factors are: (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies.  163 Pleasant St., 960 F.2d at 1088.  The balance of these factors favors the Court's exercise of personal jurisdiction over HSBC with respect to the fraud and fraudulent inducement claims.

The first factor obligates the defendant to demonstrate a "special" or "unusual" burden in defending the case in Massachusetts.  Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994).  HSBC does not point to any such burden here, and thus this factor weighs in favor of personal jurisdiction.

With respect to the second factor, concerning this state's interest in adjudicating the dispute, Massachusetts has a significant interest in exercising jurisdiction over non-resident defendants that cause injury to its residents.  "Massachusetts has a substantial interest in

redressing harms inflicted on its citizens by out-of-state defendants as well as in providing a convenient forum in which its citizens may seek relief." Lawson, 341 F. Supp. 2d at 62.

The third factor, relating to the convenience of the forum to Slade Gorton, also weighs in favor of jurisdiction. Slade Gorton's interest in obtaining relief is apparent and its choice of forum is entitled to deference. Sawtelle, 70 F.3d at 1395.

Fourth, Massachusetts has as significant an interest in resolution of this case as any other jurisdiction. It is unlikely that the parties will resolve their dispute without judicial intervention somewhere, so "[t]he most efficient path for the judicial system . . . is to move forward with the lawsuit in the present forum." Hasbro Inc. v. Clue Computing Inc., 994 F. Supp. 34, 46 (D. Mass. 1997).

The final Gestalt factor addresses the interests of the respective government interests in promoting substantive social policies. This factor does not favor one party or the other. Presumably both parties' home forums have an interest in the prevention of alleged fraud.

On balance, the Gestalt factors indicate that it is reasonable for this Court to exercise personal jurisdiction over HSBC with respect to the fraud-based claims.

### 4. Chapter 93A Claims

Slade Gorton's final claim is for violation of Chapter 93A. HSBC's alleged unfair and deceptive practices include: (1) making material misrepresentations to induce Slade Gorton to make the advances to Gray Aqua; (2) issuing a letter of credit with which it was impossible to comply; (3) making material misrepresentations that delayed Slade Gorton's response to HSBC's rejection of its first demand; (4) instructing Gray Aqua not to sign the waiver; and (5) rejecting Slade Gorton's demands under the letter of credit due to immaterial discrepancies. D. 1 ¶ 106.

The first, third and fourth bases for Slade Gorton's Chapter 93A claim are the alleged misrepresentations underpinning its fraud and fraudulent inducement claims. The jurisdictional analysis above, <u>see</u> section III.A.3, applies. Personal jurisdiction is therefore proper. The fifth basis for the Chapter 93A claim is identical to Slade Gorton's claim for breach of the letter of credit. As discussed above in Section III.A.2, the Court lacks personal jurisdiction of HSBC with respect to the breach claim. The Court therefore also lacks jurisdiction over the same claim restated as a breach of the obligations imposed by Chapter 93A.

The second basis for Slade Gorton's Chapter 93A claim is that HSBC issued a letter of credit with which it was impossible to comply. Slade Gorton asserts that its fraudulent inducement claim is based in part on a "critical" but "implicit" representation that "HSBC would issue a letter of credit that could be complied with and that it was not intending to reject from the moment it was issued." D. 30 at 17. The complaint alleges that HSBC knew that Slade Gorton could not comply with the terms of the letter of credit. D. 1 ¶¶ 42, 45. Although Slade Gorton does not allege the specific contacts or communications giving rise to this claim, it may be inferred that HSBC at least implied in the course of the parties' dealings that Slade Gorton could conceivably make a proper demand pursuant to the letter of credit and that Slade Gorton relied on that potentiality in extending credit to Gray Aqua. Construing this basis for the Chapter 93A claim as a fraud-based allegation, this Court concludes that it has personal jurisdiction over HSBC.[2]

_____

[2] Slade Gorton asserts one additional basis for personal jurisdiction. HSBC purchased or was assigned accounts receivable held by Gray Aqua related to amounts owed by Slade Gorton to Gray Aqua for the purchased fish. D. 30 at 6-7; D. 1 ¶ 58. HSBC emailed Slade Gorton at least twice demanding payment of those invoices. D. 30 at 6-7; D. 32 ¶¶ 11-12; D. 32-3; D. 32-4. In addition, Slade Gorton alleges it had "conversations" with HSBC regarding HSBC's purchase of the invoices. D. 32 ¶ 11. However, those contacts fail the first prong of the personal jurisdiction test. None of Slade Gorton's claims relates to or arises out of HSBC's contacts with

## B. **HSBC's Motion to Dismiss for Failure to State a Claim**

### *1. Governing Legal Standard*

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) requires the Court to "assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007). The complaint must set forth "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). If the pleadings lack "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable theory," then the complaint must be dismissed. Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)). The complaint must contain sufficient facts that, accepted as true, would permit the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In addition to the facts set forth in the complaint, exhibits attached to the complaint are properly considered part of the pleading for purpose of Rule 12(b)(6). Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008).

### *2. Fraud and Fraudulent Inducement Claims*

To state a claim for fraudulent misrepresentation, a plaintiff must allege "misrepresentation of a material fact, made to induce action, and reasonable reliance on the false statement to the detriment of the person relying." Hogan v. Riemer, 35 Mass. App. Ct. 360, 365 (1993). HSBC argues that Slade Gorton fails to sufficiently plead these elements. D. 25 at 12.

---

the forum regarding the accounts receivable. "[T]he defendant's in-state conduct must form an important, or [at least] material, element of proof in the plaintiff's case." Harlow v. Children's Hosp., 432 F.3d 50, 61 (1st Cir. 2005) (internal quotation marks omitted). HSBC's in-forum conduct related to the accounts receivable does not support any element of proof of Slade Gorton's claims, and therefore Slade Gorton cannot establish jurisdiction on that basis.

As discussed above, Slade Gorton's fraud in the inducement claim is based on two alleged representations:  (1) HSBC represented that it would provide guarantees or assurances of payment to Slade Gorton in connection with Slade Gorton's advances to Gray Aqua; and (2) HSBC represented that it would remit payment to Slade Gorton under the letter of credit upon Slade Gorton's demand.  D. 1 ¶¶ 84-85.  Slade Gorton's fraud claim is premised on these same two representations along with two more alleged representations:  (1) HSBC represented that it would remit payment to Slade Gorton notwithstanding the discrepancies in the draw demand upon Gray Aqua's waiver of those discrepancies; and (2) HSBC represented that Gray Aqua would sign a waiver of the discrepancies.  Id. ¶¶ 93-94.  Instead, HSBC allegedly instructed Gray Aqua not to sign a waiver.  Id. ¶ 95.

HSBC's first argument with regard to these allegations is that any assurance made by HSBC prior to the issuance of the letter of credit that it would guarantee Gray Aqua's repayment of the advances was fulfilled by the letter of credit and therefore the promise was not false.  D. 25 at 13.  Second, HSBC argues that Slade Gorton's reliance was not reasonable.  Id. at 13-14. The letter of credit embodied the entire guarantee by HSBC as well as all the terms of a proper demand, and any oral assurances prior to its issuance were superseded by it.  Id. at 18.  Third, HSBC disputes that the loss suffered by Slade Gorton was caused by the alleged fraud.  Slade Gorton received and approved the terms of the letter of credit before it was issued, changing only the dates of some of the advances, so it cannot now complain that it was fraudulent.  D. 35 at 8-9. Further, while Slade Gorton insists that it could not have complied with the terms of the letter of credit before it issued, some of the remittance confirmations for advances made after the issuance of the letter of credit also did not conform to the letter's requirements.  Id. at 8.  The loss suffered by Slade Gorton as a result of noncompliance as to the post-issuance remittance

confirmations was not caused by the alleged fraud, but by Slade Gorton's own failure to abide by the terms of the letter of credit. Id. HSBC argues Slade Gorton was not defrauded; it just failed to pay sufficient attention to the terms of the letter of credit, both in its draft and final forms. Id. at 10.

Finally, addressing HSBC's alleged promise of payment following Gray Aqua's waiver of the demand discrepancies, HSBC argues that Slade Gorton was not injured by the delay in asserting its rights. D. 25 at 16. This is because, at the time of the alleged misrepresentation, it was impossible for Slade Gorton to cure the discrepancies in its demand. Id. at 15. The dates of the advances and the corresponding remittance confirmations were immutable by the time of Gray Aqua's default and HSBC's alleged misrepresentation. According to HSBC, because it was impossible for Slade Gorton to go back in time and change the dates of the advances and information contained in the remittance confirmations, Slade Gorton could not have been harmed by any assurance regarding HSBC's intention to honor the letter of credit. Id. at 15-16.

Slade Gorton responds that HSBC cannot claim to have fulfilled its promises to Slade Gorton by issuing a letter of credit with which it was impossible to comply. D. 30 at 18. Fraud is established, contends Slade Gorton, because HSBC issued the letter of credit knowing that Slade Gorton could never fulfill its terms and never intending to pay in response to a demand by Slade Gorton. Id. at 20. HSBC's alleged assurances to Slade Gorton that it would pay upon Gray Aqua's waiver were merely an effort to string Slade Gorton along while the amount available under the letter of credit decreased. Id. The only other reasonable interpretation of HSBC's actions, asserts Slade Gorton, is that the terms with which Slade Gorton failed to comply were immaterial. Id. at 20.

Accepting Slade Gorton's allegations as true, as the Court must at this juncture, they set forth a claim for fraudulent inducement. The alleged promises by HSBC to guarantee Gray Aqua's repayment and to pay Slade Gorton upon its demand would not be satisfied by a letter of credit with which HSBC knew Slade Gorton could not comply. If HSBC knew prior to the letter of credit's issuance that Slade Gorton had already made non-conforming advances, it could be concluded that HSBC never intended to follow through on its alleged assurances to Slade Gorton. Moreover, it may be inferred from the allegations that Slade Gorton's reliance on the alleged misrepresentations was reasonable because Slade Gorton had already made advances to Gray Aqua and thus HSBC was aware that Slade Gorton could not meet the proposed terms of the letter of credit. See, e.g., D. 1 ¶ 45. In addition, Slade Gorton notified HSBC, through Gray Aqua, that the dates on the proposed letter of credit did not conform to the dates of the advances already made. D. 36-3 at 2. Slade Gorton specifically asked that the letter of credit proceed "with the advance date changes." The letter of credit did not reflect the new dates, from which it may be inferred that HSBC's intended to abide by its alleged promise to guarantee repayment regardless of any discrepancies. Slade Gorton also sufficiently alleges that it suffered a loss as a result of the fraudulent inducement. Slade Gorton alleges that, as a result of the alleged misrepresentations, it entered into the unsuccessful financing arrangement with Gray Aqua. D. 1 ¶ 87.

As for HSBC's alleged post-issuance representations, Slade Gorton adequately supports its claim for fraud. Slade Gorton alleges that HSBC represented that it would honor the letter of credit upon Gray Aqua's waiver of the demand discrepancies. D. 1 ¶ 93; D. 32 ¶ 8. Slade Gorton further alleges that HSBC told Slade Gorton that Gray Aqua would waive the discrepancies while instructing Gray Aqua not to do so. D. 1 ¶¶ 94-95; D. 32 ¶ 8. These

representations, allege Slade Gorton, were false and made with the intent to "lull Slade Gorton into inaction as a result of its belief that HSBC would honor the [l]etter of [c]redit." D. 1 ¶¶ 96-97. In reliance on these representations, Slade Gorton alleges that it delayed enforcing its rights against Gray Aqua and HSBC and was thereby harmed. Id. ¶ 98-101.

HSBC disputes that Slade Gorton adequately alleges harm. D. 25 at 15-16. A claim of fraud requires that the plaintiff act on the false representation to its detriment. FAMM Steel, Inc. v. Sovereign Bank, 571 F.3d 93, 105 (1st Cir. 2009). The amount available under the letter of credit diminished before Slade Gorton submitted its second demand, but it tendered the very same remittance confirmations that were rejected with its first demand. Id. HSBC asserts that the terms of the letter credit put Slade Gorton in the unfortunate position of being unable to cure the discrepancies in its demand because the advances and the corresponding remittance confirmations were complete prior to Gray Aqua's default. Id. Nothing about Slade Gorton's position changed between the alleged misrepresentation and its second demand under the letter of credit, and HSBC therefore concludes Slade Gorton did not defer action to its detriment. Id.

HSBC's argument, however, ignores the heart of the alleged misrepresentation – that Gray Aqua would waive the discrepancies and then HSBC would honor the letter of credit. If Gray Aqua had signed a waiver, the infirmities in Slade Gorton's demands would not matter. While HSBC insists Slade Gorton could not cure its demand, the relevant allegation is that the promised waiver would mean that Slade Gorton would no longer need to do so, whether that task was feasible or not. The promised but elusive waiver resulted in Slade Gorton being deprived of repayment of at least some of the funds advanced to Gray Aqua. Moreover, the inaction by Slade Gorton as a result of the alleged misrepresentations delayed Slade Gorton's assertion of its

rights against Gray Aqua. Gray Aqua's financial situation was quickly deteriorating, and any delay vastly reduced Slade Gorton's chances of some recovery directly from Gray Aqua.

For these reasons, Slade Gorton sufficiently alleges both fraudulent inducement and fraud, and therefore HSBC's motion to dismiss those claims is denied.

### 3. *Chapter 93A Claim*

Chapter 93A prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. L. c. 93A, § 2(a). The remaining bases for Slade Gorton's Chapter 93A claim are (1) making material representations to induce Slade Gorton to make the advances to Gray Aqua; (2) issuing a letter of credit with which it was impossible to comply; (3) making material representations to prevent Slade Gorton from protecting its interest against Gray Aqua and HSBC; and (4) instructing Gray Aqua not to sign the waiver. D. 1 ¶ 106. The first two of these bases rely on Slade Gorton's fraudulent inducement claim. In response, HSBC reiterates the arguments addressed above: no oral guarantee of payment remained viable after the letter of credit issued because the letter of credit fulfilled that guarantee; and only Slade Gorton is to blame for noncompliance with the letter of credit's terms because it had the opportunity to review a draft of the letter. D. 25 at 18. As already discussed, it may be inferred from the allegations that HSBC knew when it issued the letter that HSBC could never comply with its terms. In addition, Slade Gorton noted the issue with the remittance dates contained in the letter of credit. HSBC's apparent inaction in response could imply that it intended to meet its oral assurances despite any prior deviations from the letter's terms.

The latter two alleged bases for the Chapter 93A claim – regarding HSBC representations following its rejection of Slade Gorton's demand under the letter of credit – relate to Slade Gorton's fraud claim. In response to these charges, HSBC reasserts its argument, addressed

above, that the alleged unfair conduct was not the cause of Slade Gorton's loss.  D. 25 at 19.

HSBC further argues that a waiver by Gray Aqua would have had no legal effect and therefore

the alleged instruction from HSBC to Gray Aqua not to sign a waiver was irrelevant.  D. 25 at

19-20.  The International Standby Practices ("ISP98") by which the letter of credit is governed

provide that it is in the issuer's sole discretion to request that an applicant waive noncompliance.

ISP98, Rules 5.05, 5.06; D. 25 at 20.  Such a waiver does not compel the issuer to waive

noncompliance, so HSBC argues that a waiver by Gray Aqua would not have obligated HSBC to

also waive the defects in Slade Gorton's demands.  D. 25 at 20.

Slade Gorton alleges, however, that HSBC made assurances that Gray Aqua would waive

the demand discrepancies and that HSBC would pay upon that waiver.  This representation

implies that HSBC intended to waive noncompliance if its customer agreed to waive

noncompliance.  It is irrelevant whether HSBC was legally required to obtain Gray Aqua's

waiver and whether HSBC was required to waive the letter of credit's requirements if Gray Aqua

did.  The point of the allegation is that HSBC promised to secure a waiver and to pay, and it did

neither.  That HSBC allegedly instructed Gray Aqua not to disregard the discrepancies in Slade

Gorton's demand while promising Slade Gorton that Gray Aqua would do so raises "the

objectionable conduct . . . [to] a level of rascality that would raise an eyebrow to someone inured

to the rough and tumble of the world of commerce."  Vision Graphics v. E.I. DuPont de

Nemours & Co., 41 F. Supp. 2d 93, 101 (D. Mass. 1999).  The alleged Chapter 93A violations

based on HSBC's fraudulent conduct may proceed.

## IV.    Conclusion

For the aforementioned reasons, HSBC's motion to dismiss for lack of personal

jurisdiction, D. 24,  is ALLOWED as to Count I and the fifth basis for Count IV (refusing to

honor Slade Gorton's draw demands based on immaterial discrepancies).  As to the remaining Counts against HSBC, the motion to dismiss for lack of personal jurisdiction is DENIED. HSBC's motion to dismiss for failure to state a claim, D. 24, is DENIED.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge